Good morning. First case of the day and of the term is a case number 117242 people of the state of Illinois versus Kavanaugh Hughes. Are you ready to proceed? Good morning. May it please the court. I'm Janet Mahoney, Assistant Cook County State's Attorney on behalf of the people of the state of Illinois. The appellate court in this case erred when it reversed the defendant's conviction for the home invasion, armed robbery, and murder of Elijah Coleman and Sua Sponte reversed his conviction for the murder of Joshua Stanley. After finding the defendant's post polygraph statement was involuntary based upon theories raised for the first time in the appellate court and based upon a theory the appellate court raised Sua Sponte during oral argument after its own factual investigation of the record. The appellate court erred in reviewing any of these theories because all of them were affirmatively waived. Affirmative waiver is a voluntary relinquishment or abandonment of a known right and that is exactly what happened in this case. Defense trial counsel filed a vague boilerplate motion to suppress and prior to the hearing on the motion during his opening remarks, counsel limited those theories to the question of whether the detectives questioned defendant during his transport from Michigan to Chicago without benefit of a video recording, whether he was read his Miranda rights, and whether his handcuffs were too tight during their transport and it impacted the voluntariness of his statements. Recognizing that the other theories raised in his motion to suppress were theories that he could have pursued, he decided to voluntarily abandon them and that constituted a waiver in this case. And we know it's a waiver in this case because how is a reviewing court to review the issue of whether these new theories impacted the voluntariness where there are no factual findings regarding those theories and there is no ruling regarding those theories. In fact, the court had to rely on trial evidence and evidence found in a sentencing document that wasn't, that weren't verified in order to support its finding on those alternative theories presented for the first time on appeal. In addition to that, it encourages piecemeal litigation. It encourages a defense counsel to file a vague boilerplate motion in the trial court, pursue only some of them, actually openly disavowing some of them, and then raising them for the first time before the appellate court and using sentencing documents and trial testimony to support that. This leaves the state without any opportunity to defend their position on those alternative theories. It's unfair to the trial court who never had an opportunity to rule on those alternative theories and it certainly is unfair to the victims of these serious crimes. In addition to the waiver argument, the appellate court sui sponte raised its own theory and this also was error. The court viewed the videotape interrogation in its entirety and concluded that in a portion of it, the defendant was smoking marijuana and then was drug addled when he confessed in his post polygraph statement. This also was error. It is impossible to discern from the videotape exactly what the defendant's doing. The detectives never had the opportunity to the state never had the opportunity to explain what happened at that time and certainly there was no testimony that the defendant was drug addled when he provided a confession four hours later. But what do you think the standard review should be for a reviewing court that has the same video that the trial court has been shown? First, keeping in mind that this issue was never raised by the defense counsel, this court made it clear in People v. Givens that it's for clear and obvious error. And there is no clear and obvious error in this case where the behavior issue is ambiguous, the words are unclear, and the impact on the defendant's ability to voluntarily confess isn't clear either. Well, if the trial court, would the trial court be able to make a determination based on the video? In this particular case, the video itself does not answer that question. It's impossible to tell exactly what he was smoking. It's impossible to tell its impact. If the issue had been raised, then testimony would have been provided that would have dealt out the issue about whether the defendant did smoke marijuana in there and whether he was drug addled following that. So alone in this case, the video is not dispositive. This issue has not been fairly and clearly developed. In addition to sua sponte raising its own theory of involuntariness, the appellate court in this case also sua sponte reversed a conviction that was not even being challenged. This is important because the remainder of the evidence also answered the question. So again, this was not a clear and obvious error that impacted that conviction that wasn't being challenged. The other evidence in the record established defendant's guilt of the murder of Joshua Stanley, where he readily admitted that he committed that crime. There were a series of errors in this case and this opinion cannot stand. It is very important because it impacts the way every motion to suppress will be litigated in the future, in that certain issues will be reserved for the appellate court, especially when there's video evidence in the case. And in that instance, then the state will have to answer every possible theory of involuntariness that may come up in the pretrial motion to suppress. For these reasons and the reasons argued in the people's brief, the people ask that this court reverse the appellate court's opinion and reinstate defendant's convictions. I want to ask for an alternative relief that it be set back for a new suppression hearing if the appellate court is reversed. That point was made to highlight that even given that there wasn't a waiver where he could overcome forfeiture, even the remedy that was ordered here was improper. It isn't that the state wants us to go back for a hearing on the motion to suppress. It is the state's position that this was affirmatively waived. Plain error does not apply to affirmatively waived issues. Even if forfeiture applied, he couldn't overcome forfeiture. But even look at the remedy. Instead, the appellate court held its own motion to suppress and the people weren't allowed to respond to the new theories. The trial court wasn't allowed to rule on those new theories. So, at the very least, the remedy should have been remanding for an additional hearing on those new theories that were raised for the first time. But in no way is that the state's position. And again, if there are no other questions, for these reasons and those reasons in our brief, we ask that you affirm the defendant's convictions. Thank you. Good morning, Your Honor's Counsel. My name is Debra Pugh of the Office of the State Appellate Defender and I represent the appellee, Kavanaugh Hughes. Ms. Pugh, can we start where Ms. Mahoney left off? If we affirm, wouldn't this court be saying that you preserve every possible ground for suppression by filing a boilerplate motion that listing concludes to refashion every conceivable basis for suppression? Well, no, in this case that wouldn't be because that's not exactly what happened in this case. It is true that counsel filed a general motion to suppress in which she alleged physical, psychological, mental coercion and deception by detectives. And it's true that she did utter an ambiguous statement upon introducing three new claims related specifically to the ride from Michigan to Area 2. However, no one treated at the suppression hearing, at throughout the trial, or at the motion in the trial, no one treated at the psychological and mental coercion claims as though they had been waived. In fact, the court referred to there being claims about mental and physical coercion and defense in the state called Detective Figaro Mitchell, the detective who had questioned Kavanaugh Hughes approximately 12 hours, 18 hours, it was 12 hours after he had been brought from Michigan to Area 2. And not only did they question her and call her, they asked whether he consented to be interviewed again about his communication abilities, whether he had any complaints about the treatment from the police detectives. Was there any testimony elicited about what occurred in the jail cell? There was some testimony about, regarding all of the issues raised, it was a pretty cursory sort of, I should say there's not a lot of detail elicited by the state, and the burden was on the state, and the state did not elicit a lot of details about any of these things. But- What wasn't most of the testimony focused on the trip from Michigan? No, certainly not, especially not related to Detective Figaro Mitchell, whose confession is at issue here. She had nothing to do with the drive from Michigan to Area 2. And she was, and not only did the state question her about these issues that also asked her whether Hughes appeared that he was intimidated by the detectives who had brought him. And the state didn't say, no, this issue has been waived, this issue has been waived, you can't ask that. It just continued to be litigated. And the court ruled on it, finding that whether there was physical and mental coercion. And then again at closing arguments, and this was a bench trial, and so the closing arguments sort of on both sides went back to the suppression hearing. And defense counsel argued that Hughes' age and his exhaustion and his grief, the deception by detectives, all of these things rendered his confession involuntary. And the state again didn't say, no, these issues have been waived. The state had every opportunity to say that this had been waived, but instead they're only making this argument now. In fact, the state said that the coercion argument held no water. They said the involuntary argument was silly. They didn't say it had been waived. And again in the motion for a new trial, where again the state could say this issue had been waived, why are we arguing about this? Defense counsel argued that Hughes had been held up all night, that he'd been pressured to confess. And all these things were raised again with no waiver argument from the state. So if it really was waived, why did the state argue against it? So this doesn't mean that any time you file a boilerplate motion, that that means that every issue has to be addressed. But the state never clarified. So if the state is now claiming that this one ambiguous statement meant the waiver of this teenager's rights, this teenager who was facing the death penalty, and the burden was on the state to prove that this confession was voluntary, the state never made any clarifying questions. Wait, so are you withdrawing the other claims? The state had every opportunity to do that and chose not to, and rather got in and argued about these issues. And so the state claims that this was a well articulated strategy to abandon these other claims, these claims that the defense counsel had raised in the motion to suppress. There was no strategy. There was one ambiguous statement that was never followed up on and that no one relied on. The state's playing a gotcha game here. This is a teenager who's facing either the death penalty or mandatory natural life in prison. And the state's seizing upon one ambiguous statement that was relied on by no one. And relying on it now, on appeal, to say that Kavanaugh Hughes could not challenge his confession. This would also have a catastrophic effect on judicial economy in the opposite way than was raised earlier, in that defense counsel now would be required to go through and argue every single issue that was raised in any motion in limine, because otherwise the state would now say, these issues were affirmatively waived when you failed to specifically argue them in the motion in limine or the motion for new trial. In the opinion, the majority and the dissent seem to have a different view of the evidence. Mm-hm. That sounds like a factual question that should have been resolved by the trial court. How does the appellate court resolve a factual dispute? In a factual dispute such as what occurred between, the main factual dispute, as I read it, between the dissent and the majority was related to the marijuana issue, which is obviously an incredibly tricky issue in this case. And in this case, perhaps as the state requested repeatedly in their PLA, their motion to reconsider the denial of PLA, their brief, that if this court remains troubled by any inconsistencies in the decision or any factual disputes, it should be remanded for further suppression hearing. But what is your position? Do you believe that it was appropriate for the majority to resolve that factual issue? I believe, well, the majority, it was victim. The majority explicitly stated that their decision was not based on the marijuana issue. So it is in some sense not relevant whether the marijuana was actually smoked or not or what's determined based on that because the majority opinion was very careful to say, well, because of his youth, because of his exhaustion, because of his lack of food, because of the deception by the detectives, this doesn't even matter whether or not he smoked marijuana. But there is a question of how to determine videotaped evidence. And that, as the state suggested in its own brief, was that the appellate court can look at the videotaped evidence and use that to determine whether the trial court's ruling was against the manifest weight of the evidence. And there's nothing controversial about that. Christopher Kaye said that. The state said that, and we said that all in our briefs, that the appellate court is permitted to look and is permitted to weigh it against any findings made by the trial court. Ms. Pugh, even if we would find that the defendant's post-polygraph confession should have been suppressed, wouldn't the defendant be guilty for Coleman's murder based on accountability? Well, it's true that when Kavanaugh Hughes was first brought to Area 2, that he made statements that would suggest that he had an involvement in the Coleman murder, that's certainly true. However, that doesn't necessarily mean that he would be found guilty of murder in that case. In fact, Dorian Skiles, also facing the death penalty, was facing charges related to Coleman and Stanley due to accountability and got off with a 17-year sentence. And so that doesn't mean that he would be found guilty of murder. Additionally, at that time, it was really the last confession related to the shooting of Coleman that sort of brought everything together in terms of all of the evidence. So he was saying these, Kavanaugh Hughes was saying various things, none of it was very consistent. All of it conflicted with the other evidence against him at trial in terms of the evidence from Cordell Matthews and from Dorian Skiles. The evidence that they gave was different from what he originally testified to. And there was no physical evidence connecting him to the Coleman murder. It was the same gun used in both cases, but Dorian Skiles freely admitted that that gun was his. So yes, there's certainly a question that he did implicate himself to some degree. Whether that means that he would be facing mandatory natural life for that, that hasn't been proved at all. And so for that reason, the admission of the involuntary confession was not harmless. Because- If this court feels that the appellate court reversed on issues that were forfeited. Could the client survive plain error review? Is that what you're getting at? Do you think the evidence was closely balanced? The evidence was, I mean, it's the same analysis between harmless error and first prong plain error analysis. It's just a matter of who has the burden there. And for that reason, it would be first prong plain error as well, do the closely balanced evidence. Because there's just, yes, he did implicate himself with that. Doesn't mean that at trial, this 19 year old would be found guilty of double murder and facing, he was found death eligible and is now facing a natural life sentence. And that there was this small, there was this evidence that's very, the two people who testified against him were highly biased. They were incredible for different reasons. And there was no physical evidence. So there would be an issue of closely balanced evidence. And the- Did the defendant ever challenge the conviction of the Stanley murder? In the, no, I was not the attorney in the appellate brief, and so I can't speak to that completely directly. But no, he did not, in his brief, he did not raise an issue specifically related to the Stanley murder. But perhaps- Do you think the appellate court overstepped their bounds, reversing the murder conviction? Well, they certainly- When it wasn't even challenged? Well, they certainly have the authority to do so under Supreme Court Rule 366. And in retrospect, it probably should have been raised because, as the state, as the state claimed themselves in their joiner motion, and again, in the supplemental briefing that we both argued regarding jurisdiction, these cases were very closely intertwined. There was no motive for the Stanley murder unless there was a Coleman murder. And any confession related to the Coleman murder would naturally have an effect  provided as the state argued in their joiner motion. So while we did not ask for the Stanley murder to be reversed, the appellate court was acting within their authority and made the correct decision to reverse it because of the closely intertwined nature of the two crimes. However, if this court finds that the court did overstep their boundaries, then we would ask not for both convictions to be overturned, but for the Coleman murder to be overturned and the Stanley murder to be remanded for further sentencing. And just to go back to a little bit to talk about why the confession itself was involuntary, this was, again, a 19-year-old, very little education. He was exhausted. If this court has not yet viewed the videotape of the polygraph, we would urge this court to do so. This is a kid sitting in a chair, grunting, falling asleep, as this confession is being dragged out of him by this officer who was lying to him, saying that she was on his side, she was gonna go to court, she was gonna tell the judge that he passed the polygraph and that he told the truth and how important that was. And he'd also been given very little food. He had one sandwich ten hours after he arrived. The state says that he was fed a hamburger. There's no evidence of that. He said something about hamburger in Audible, Michigan. And the state also says that there was some conversation about asking for food prior to the trip to the polygraph office. In my transcript, in my video, that conversation doesn't exist. He asked for a cigarette, a square. But, and that was immediately when the detective first arrived in the room, he asked for a cigarette. But there's no evidence whatsoever to suggest that he ate any more than one sandwich between being arrested at 2 PM, finally confessing at 5 AM. And this is a teenager held up all night and just falling asleep. And he was tired, he was scared, he was being lied to. Detective Ford said that there was DNA evidence against him. You can see in the video, he just got his cheek swabbed a half hour ago. That was a lie. So even if we don't rely on any of the evidence at trial or in the PSI, which the appellate court really shouldn't have relied on, we admit that. There's so much evidence to show that this kid was just exhausted, his will was overborne, and this final confession really was involuntary. So if this court has no further questions, then we would again ask to affirm the appellate court on both issues, or to affirm on the Coleman murder and to remand for further sentencing on the Stanley murder, should this court find that the appellate court erred in reversing both convictions. Thank you. Defense counsel at trial embarked on a very specific strategy in this case. And that was, he was challenging the voluntariness of the confessions under the theory that he was not videotaped during the transport from Michigan to Illinois, and he was questioned during that time. If that were in fact true, then every other statement he made after that would have been presumed inadmissible, involuntary, with an enormous standard for the state to overcome in order for those statements to come in. And that was the strategy he chose for his motion to suppress. At trial, he argued something alternatively. He tried to muddy up the waters regarding the statements, saying they weren't reliable because he was 19, because he was tired, because he was questioned exhaustively, because he was falling out of his chair. But those arguments were made in regard to his reasonable doubt argument to the trial court during the trial and at the motion for new trial. That was not made or presented as a theory for a motion to suppress. In this case, Detective Mitchell was called and questioned to confirm that each and every statement the defendant made was videotaped. It was continuing from the time he arrived at the police station at 3.28 in the afternoon until 6.01 or 6.10 in the morning the following day. The state made a showing that every second the defendant was with the police officers and were questioned, it was videotaped. And that answered the question that the defendant raised. It also answered the question the defendant was repeatedly given his Miranda rights. So there was a reason to call Detective Mitchell. Because if the state had not called them, then the claim would have been, we did not establish that each and every one of his statements were videotaped. And therefore, defendant's motion to suppress should have been granted. There was a reason for that detective to be called. The theories raised here today rely on facts that were brought in during the trial and in the sentencing document. Counsel asked this court to now review that based on the videotape, admitting that the appellate court overstepped its bounds when it relied on that trial testimony and on that sentencing document. What we are here today is to review what the appellate court did. And what the appellate court did here was wrong. If defendant is correct that all the issues were litigated at the hearing on the motion to suppress, then this court would not have to look at the trial testimony or at the sentencing document. However, in their own briefs raised here before this court, there is a reliance on trial testimony and information found in the sentencing documents. These issues were not litigated at the motion to suppress. They were litigated in the appellate court without a ruling from the trial court and without the participation of the state in this case. The evidence in this case was not closely balanced. There were five prior statements in which he readily admitted to killing Joshua Stanley and in which he made himself accountable for the murder of Elijah Coleman within 45 minutes of his arrival at the police station. And no, what his co-defendant, Skiles, got in this case should have no bearing on whether the evidence in this case was closely balanced or not because he pled guilty. There was not a trial on there. With regard to reviewing the Joshua Stanley conviction and the reference to Rule 366, that's a rule that applies to civil appeals. There is nothing really that indicates that in a criminal case that there should be such an extensive review of an issue that was not raised by the defendant or a conviction that wasn't challenged by the defendant. However, in this case, the evidence of his guilt in Joshua Stanley's murder was not even closely balanced. There's not a clear and obvious error. There was no reason for the appellate court to step in and reverse that conviction. And unless there are any questions, we again ask that you reinstate defendant's convictions and reverse the appellate court's opinion. Thank you. Case number 117242, People of the State of Illinois v. Kavanaugh-Hughes, will be taken under advisement as agenda number one. Ms. Mahoney and Ms. Pugh, thank you for your arguments today. You're excused this time.